IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:10CR60 |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM HAHN, | ) | SENTENCING MEMORANDUM |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on December 22, 2010.

**I. BACKGROUND**

   A.  Facts

The defendant was charged in Count I of the indictment with knowingly receiving and distributing visual depictions and attempting to receive depictions of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(2), and in Count II with knowingly possessing computer files containing an image of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Filing No. 1, Indictment. Under 18 U.S.C. § 2252A, it is a crime to knowingly receive or distribute any child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(2). The mandatory minimum sentence for receipt and distribution of child pornography (the crime charged in Count I) is five years and the maximum is twenty years. 18 U.S.C. § 2252A(b)(1). In contrast, possession of child pornography (the crime charged in Count II) carries a maximum sentence of ten years for a first offender, with no minimum sentence. 18 U.S.C. § 2252(b)(1).

Hahn entered a plea of guilty to Count I of the Indictment.  Filing No. 22, Plea Agreement.  The government agreed to dismiss Count II at sentencing, to move for a three-level reduction for acceptance of responsibility, and to recommend a sentence at the low end of the Guidelines sentencing range.  *Id.* at 1-2.  The court accepted Hahn's plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated Hahn's sentence under the United States Sentencing Guidelines ("the Guidelines").  Filing No. 19, Minute Entry.

In the PSR, the Probation Office based its outline of the offense conduct on the prosecutor's version of events.  Filing No. 34, PSR at 4.  As part of an undercover investigation of a peer-to-peer network for child pornography, a Nebraska State Patrol officer observed that Hahn's shared-file folder contained 453 files, 62 of which were known images or videos of child pornography.  *Id.*  Hahn's computer was seized pursuant to a state-authorized search warrant on his residence in Grand Island, Nebraska, and forensic analysis of the hard drive revealed more than 150 videos and 600 images of child pornography.  *Id.*  Multiple images involved prepubescent minors, including toddlers and infants, and bondage, torture, and pain were also depicted.  *Id.*

The Probation Office determined that U.S.S.G. § 2G2.2(a)(2) provides a base offense level of 22 for Hahn's violation.  *Id.* at 6.  It found the following upward adjustments applicable:  a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor); a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) (for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain); a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for

material that portrays sadistic or masochistic conduct or other images of violence);[1] a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a five-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 600 images).  *Id.* at 6-7.  The application of these enhancements results in an adjusted offense level of 40.  *Id.* at 7.  After subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, Hahn's total offense level under the Guidelines is 37.  *Id.*  Hahn has zero criminal history points and his resulting criminal history category is I.  *Id.*  At offense level 37 and criminal history category I, Hahn's Guidelines range of imprisonment is 210 months (17½ years) to 240 months (20 years).[2]  The government adopted the findings in the PSR.  Filing No. 25.

The defendant moved for a deviation or variance from the Guidelines range under 18 U.S.C. § 3553(a) based on his lack of a criminal record, the low likelihood that he presents a danger to minors and the fact that he is amenable to treatment services.  *See* Filing No. 28, Motion; Filing No. 32, Brief.  He also argues that the Guidelines do not provide an appropriate sentence for his conduct because they are not based on empirical evidence.  Filing No. 32, Brief at 4.

Hahn is thirty years old.  Filing No. 34, PSR at 11.  He is a high school graduate and has an Associate of Arts degree in medical laboratory technology from Central Community

---

[1] Under Eighth Circuit case law, the materials possessed by the defendant portray sadistic conduct. *United States v. Diaz,* 368 F.3d 991, 992 (8th Cir.2004); *United States v. Belflower,* 390 F.3d 560, 562 (8th Cir. 2004) (per curiam) (stating that images depicting an adult penetrating or attempting to penetrate a minor are per se sadistic because "[s]uch images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor.")..

[2] Hahn's Guidelines sentence is capped at the statutory maximum.  Otherwise, the high end of his recommended sentence would be 262 months (almost 22 years).

College in Grand Island, Nebraska.  *Id.* at 9.  He is not married and has no children and

has always lived at home with his parents.  *Id*. at 9.  He has been consistently employed

or attending school for all of his adult life.  He was employed as a night auditor at Quality

Inn in Grand Island, Nebraska, earning $9.00 per hour, at the time of sentencing.  He was

formerly employed for 13 years as a manger at Valentino's Restaurant in Grand Island,

Nebraska.

A psychological evaluation indicates that Hahn is of average intelligence.  His overall

judgment and impulse control are fair, but his judgment with respect to sexual issues is

poor.  Based on a review of records and Hahn's self-report, he meets the diagnostic criteria

for pedophilia.  His risk to reoffend is considered moderate, though if he were to reoffend,

it would likely be through a non-contact Internet offense.   Hahn had a relatively

dysfunctional upbringing and his formative development has contributed to a negative self-

image with interpersonal and emotional deficits in his ability to appropriately connect and

relate to others.   He has been diagnosed as suffering from Personality Disorder (not

otherwise specified) with Avoidant and Schizoid traits.

        B.   LAW

            1.   Sentencing

The Sentencing Guidelines are no longer mandatory and the range of choice in

sentencing dictated by the facts of the case has been significantly broadened.  *See United States v. Booker,* 543 U.S. 220, 260-61 (2005); *Gall v. United States,* 552 U.S. 38, 59 (2007); *Kimbrough v. United States,* 552 U.S. 85, 101 (2007); *Rita v. United States,* 551 U.S. 338, 349-50 (2007); *Cunningham v. California,* 549 U.S. 270, 286-87 (2007).  District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor


the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at 101 (quoting *Booker,* 543 U.S. at 245-246).

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a).[3] *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)). Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, they are not the only consideration. *Gall*, 552 U.S. at 49. "[T]he district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at 113 (Scalia, J., concurring). Further, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Id.* at 50; *Nelson*, 129 S. Ct. at 892 ("The Guidelines are not only not mandatory on

---

[3]Those factors are:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)  the need for the sentence imposed-
    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment or the offense;
    (B)  to afford adequate deterrence to criminal conduct;
    (C)  to protect the public from further crimes of the defendant; and
    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)  the kinds of sentences available;
(4)  the advisory guideline range;
(5)  any pertinent policy statements issued by the Sentencing Commission;
(6)  the need to avoid unwarranted sentence disparities; and
(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

sentencing courts; they are also not to be *presumed* reasonable") (emphasis in original). The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. *Nelson,* 129 S. Ct. at 891-92.

The Supreme Court rejects the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 49. The court is free to consider "whether the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita,* 551 U.S. at 351 (citations omitted).

The court can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards." *Kimbrough,* 552 U.S. at 108-09; *Rita,* 551 U.S. at 349-50. When operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at 109 (quoting *United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007)* (McConnell, J., concurring)). In formulating the Guidelines, the Commission

6

developed and used data on past practices and recidivism.  *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing:  An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72-73 (November 2004), available at http:// www.ussc.gov/ 15_ year/ 15_ year_ study_ full.pdf ("Fifteen-Year Assessment"); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at 96; *Gall,* 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").  The Commission established the offense levels for each crime, linked to a recommended imprisonment range, based on these sentencing statistics.  Fifteen-Year Assessment at 14.  Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range.  *See Kimbrough,* 552 U.S. at 109.

When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita,* 551 U.S. at 350); *see also Gall,* 552 U.S. at 46 n.2. (noting that not all Guidelines are tied to empirical evidence).  Consequently, the Guidelines that are not based on empirical evidence are a less reliable appraisal of a fair sentence.  *See Kimbrough,* 552 U.S. at 109-110.  In such cases, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at 110; *see also*

7

*Spears v. United States*, 129 S. Ct. 840, 843 (2009) (per curiam) (clarifying that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines"); *United States v. O'Connor*, 567 F.3d 395, 398, n.4 (8th Cir. 2009) (assuming without deciding that *Kimbrough's* holding extends beyond the crack-cocaine Guidelines); *United States v. Huffstatler*, 571 F.3d 620, 624 (7th Cir. 2009) (noting that district courts may "have the freedom to sentence below the child-pornography guidelines based on disagreement with the guidelines," but are not required to do so).

Both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission departed from past practices in setting offense levels for child abuse crimes and sexual offenses. Fifteen-Year Assessment at 15, 72-73; United States Sentencing Commission, *The History of the Child Pornography Guidelines* 44-48 (October 2009), available at http://www.ussc.gov/Publications/Offense_Types/index.cfm ("Child Porn. History Rep't") (discussing the Commission's approach to setting a base offense level that corresponds to a mandatory minimum sentence) (last visited Jan. 3, 2011); Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (July 3, 2008), available at http://mow.fd.org/index.shtm (unpublished comment, last visited January 3, 2011). The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in response to statutory directives.[4]   Child Porn. History

---

[4]Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children. *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253; the Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253; the Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a); the Sex Crimes Against Children Act of 1995, *codified as amended*

Rep't at 6 (stating "Congress has specifically expressed an intent to raise penalties associated with certain child pornography offenses several times through directives to the Commission and statutory changes aimed at increasing the guideline penalties and reducing the incidence of downward departures for such offenses" and noting that "[the Commission] must bow to the specific directives of Congress"); *see, e.g.,* U.S.S.G. App. C, Vol. I, Amends. 435 & 436 (Nov. 27 1991), 537 & 538 (Nov. 1, 1996); Vol. II, amends. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amends. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, *Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties* (June 1996), available at http://www.ussc.gov/Legislative_and_Public_ Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/199606_RtC_Sex _Crimes_Against_Children/SCAC_Executive_Summary.htm (last visited January 3, 2011) ("Sex Offenses Rep't").

At the inception of the Guidelines, simple possession of child pornography was not a crime and the now-applicable Guideline provision, § 2G2.2, only applied to "transporting, receiving, or trafficking" offenses. *See* U.S.S.G. § 2G2.2 (1987). The acts of possession and possession with intent to distribute child pornography criminalized as part of the Crime Control Act of 1990. *See* Pub. L. 101-647, § 323(b), 104 Stat. 4789, 4818-19 (1990); *United States v. Vig,* 167 F.3d 443, 449 (8th Cir. 1999) (noting the expansion of Congress's

at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, *codified as amended* at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional* in *Ashcroft v. Free Speech Coal.,* 535 U.S. 234 (2002), & 2252A; the Protection of Children from Sexual Predators Act of 1998, *codified as amended* at 18 U.S.C. § 2426; the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), *codified as amended* at 18 U.S.C. § 2252B; the PROTECT Our Children Act, Pub. L. No. 110–401, § 304 (2008).

enforcement authority as a result of the criminalization of the mere possession of child pornography). Correspondingly, Congress directed the Sentencing Commission to "amend existing Guidelines for sentences involving sexual crimes against children . . . so that more substantial penalties may be imposed if the Commission determines current penalties are inadequate." Pub. L. 101-647, 1990 S. 3266, Title III, § 323(a), (b), 104 Stat. 4789, 4819 (Nov. 29, 1990).

In 1991, over the objection of the Sentencing Commission, Congress, reacting to the erroneous perception that the Sentencing Commission had lowered the penalties for child pornography crimes, explicitly directed the Commission to alter the Guidelines to correspond to its perception of the Crime Control Act of 1990. *See Proceedings and Debates of the 102nd Congress, First Session,* 137 Cong. Rec. H6736-02, H6736, H6741, 1991 WL 187764, *H6737, *H6741 (Cong. Rec.) (1991). Originally, the Commission had decided to treat receipt, as opposed to receipt with intent to traffic, as analogous to possession rather than to trafficking because receipt is a logical predicate to possession.[5] Child Porn. History Rep't at 19; U.S.S.G. App. C, Vol. I, Amend. 372. Congress rejected the Sentencing Commission's advice and in doing so, abandoned the studied "empirical" approach to sentencing with respect to child pornography crimes. *See Proceedings and Debates,* 137 Cong. Rec. H6736-02, H6736, H6741, 1991 WL 187764, at H6738 (Correspondence to Congressman Edward R. Roybal from Sentencing Commission Chairman William Wilkins); Child Porn. History Rep't at 19-22. Congress explicitly directed

---

[5]The Commission proposed the creation of a separate guideline provision, § 2G2.4, with a base offense level of 10, to cover possessing, receiving, or transporting child pornography. See Notice of Proposed Amendments to the Sentencing Guidelines, 56 Fed. Reg. 1846-01, 1863, 1991 WL 310646 (proposed Jan. 17, 1991). Under the Sentencing Commission's proposal, trafficking would have continued to be covered in § 2G2.2, with a base offense level of 13. *Id.* at 1863-64.

the Sentencing Commission to, among other things, increase the base offense level for child pornography crimes; to include "receiving" pornography in the Guidelines section that covered trafficking and transporting; to increase the base offense level for receiving, transporting, and trafficking from 13 to 15; to add enhancements for the number of items possessed; and to add an enhancement for patterns of activity involving the sexual abuse or exploitation of a minor.  *See* 137 Cong. Rec. H6736-02, H6741, 1991 WL 187764, at H6741; Child Porn. History Rep't at 23-24.

In 1995, Congress again directed the Commission to increase penalties for child pornography and other sex crimes against children.  *See* U.S.S.G. App. C., Vol. I, Amends. 537 & 538 (November 1996) (implementing the Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774 (1995) (enacted); 141 Cong. Rec. H4122-01, 1995 WL 143978 (1995)); Child Porn. History Rep't at 26.  The Sentencing Commission carried out that directive by increasing the base offense levels for producing, trafficking, and possessing child pornography by two levels and adding a two-level enhancement for use of a computer.  *See* Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 61 Fed. Reg. 20,306, 20,307-08, 1996 WL 223875 (F.R.) (May 6, 1996) (to be codified at U.S.S.G. §§ 2G2.1, 2G2.2, 2G2.4); Child Porn. History Rep't at 27.  The Commission also clarified and broadened the definition of the "pattern of activity" enhancement to apply to conduct unrelated to the offense of conviction in order to "increase the sentences for the most dangerous offenders."  Sex Offenses Rep't, Executive Summary at i; *see* U.S.S.G. App C, Vol. I, amend. 537.

Congress also directed the Sentencing Commission to prepare a report and analysis of sex offenses against children and child pornography for submission to Congress.  Sex

11

Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774, 775 (1995) (enacted).   In its report to Congress, the Sentencing Commission noted that "[i]t appears that a significant portion of child pornography offenders have a criminal history that involves the sexual abuse and exploitation of children" and recommended that Congress increase statutory maximum sentences for production of child pornography and double the statutory maximum for offenders with prior convictions for sex abuse crimes.   Sex Offenses Rep't, Executive Summary at ii; Child Porn. History Rep't at 37 (noting that the enhancements were aimed at child pornography offenders with a history of abusing children).   The amendments and recommendations had the goal of "ensur[ing] lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children."   Sex Offenses Rep't, Executive Summary at i.   The Sentencing Commission acknowledged in its report, however, that federal prosecutions for child sex offenses represented a small percentage of the total number of such cases nationwide, because the vast majority of sex offenses were prosecuted in state court.[6]   Id.   Noting that "[p]enalties for sex offenses against children have been increased in recent years and are quite severe," the commission nonetheless found amendment appropriate "to increase sentences for the most dangerous offenders."   Id.

Congress responded to the Commission's report with legislation that increased the penalties for child pornography, exploitation and abuse.   See Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, 1998 H.R. 3494, 105th Cong., 112 Stat. 2974 (1998) (enacted).   Congress directed the Commission to increase penalties and

---

[6]In fact, the Commission's report was based on a study of only twenty-two Internet child pornography cases sentenced under U.S.S.G. § 2G2.2, the trafficking/receipt Guideline.   Sex Offense Rep't at 29.

add enhancements, and to clarify that distribution would include distribution for nonpecuniary gain.  *Id.,* 112 Stat. at 2980-82.  The Sentencing Commission consequently afforded expansive coverage to the meaning of distribution in U.S.S.G. § 2G2.2(b)(3)(A)-(F) and added several enhancements depending on the purpose and audience for the distribution.  U.S.S.G. App. C, Vol. II, amend. 592 (Nov. 1, 2000); Child Porn. Rep't at 35-36.

In 2003, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (the "PROTECT Act"), which established a five-year mandatory minimum sentence for trafficking/receipt offenses, increased the statutory maximum for trafficking/receipt offenses from fifteen to twenty years and the maximum for possession offenses from five to ten years.  18 U.S.C. §§ 2252(a)(1)-(3) and 18 U.S.C. § 2252A(a)(1) - (4) and (6); *see also* The PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 653 (2003) (enacted); U.S.S.G. App. C, Vol. II, amend. 649 (April 30, 2003).  In the PROTECT Act, Congress itself made direct amendments to the Guidelines by increasing the offense level for possession and distribution of images of sadistic or masochistic conduct and adding enhancements for the number and type of child pornographic images.  *See* The PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 673 (2003); Child Porn. History Rep't at 39.  Congress also issued further directives to the Sentencing Commission.  *See* U.S.S.G. App. C, Supp. Vol., amend. 649 (Apr. 30, 2003), 664 (Nov. 1, 2004); Child Porn. History Rep't. at 41.  To conform to the new mandatory minimum sentences and higher statutory maxima, the Sentencing Commission raised base offense levels for trafficking/receipt offenses from 18 to 22 and base offense levels for possession from 15 to 18.  U.S.S.G. App. C, Supp. Vol.,

amend. 664 (Nov. 1, 2004); Child Porn History Rep't at 49. The Commission noted that enhancements for use of a computer and number of images would be applicable in every case, thus ensuring that the Guideline sentences would approximate the statutory mandatory minimum sentences. U.S.S.G. App. C, Supp. Vol., amend. 664 (Nov. 1, 2004); see also Child Porn. History Rep't at 46-47. In the fall of 2008, Congress again passed legislation relating to child pornography offenders. PROTECT Our Children Act of 2008, Pub. L. No. 110–401, § 304, 122 Stat. 4229, *4243 (2008); Child Porn. History Rep't at 50. The PROTECT Our Children Act created a new offense at 18 U.S.C. § 2252A(a)(7) with a statutory maximum of 15 years, making it unlawful to produce or distribute "morphed images" of an identifiable minor. Id.

The text and structure of the criminal child pornography statutes prohibit conduct across a spectrum of activity ranging from merely possessing child pornography to "mailing, transporting or shipping child pornography" to "knowingly receiving or distributing child pornography" to "knowingly reproducing, advertising, promoting, presenting or distributing" child pornography to "knowingly selling or possessing with intent to sell" child pornography. 18 U.S.C. § 2252A(a)(1)-(4). The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils. See Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); see also notes following 18 U.S.C.A. § 2251; Child Porn. History Rep't at 30-31. In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to

desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity." U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000); Child Porn. History Rep't at 30-31. In drafting the Guidelines, the Commission was also interested in "how best to identify those offenders at the greatest risk of recidivism." Child Porn. History Rep't at 37. The primary victims of the crime of possession of pornography are the exploited children. *See United States v. Rugh*, 968 F.2d 750, 756 (8th Cir. 1992).

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice. Fifteen-Year Assessment at 23-24. The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge." United States Sentencing Commission, *Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 14-15 (August 1991) ("Mand. Min. Rep't"), available at http://www.ussc.gov/ Legislative_and_Public_Affairs/ Congressional_Testimony_and_Reports/Mandatory_Minimum_Penalties/199108_RtC_ Mandatory_Minimum.htm (last visited Jan. 3, 2011). The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system. *Id.* at 1; *see also* Fifteen-Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory

penalty statutes are used inconsistently in cases in which they appear to apply"). The Commission reports that its efforts to ensure proportionality between the child pornography trafficking, receipt, and possession offenses with other crimes such as first degree murder, second degree murder, assault with intent to murder, conspiracy to commit murder, rape, production of pornography, voluntary manslaughter, kidnapping, and travel to engage in a sex act, have resulted in median sentences in fiscal year 2008 "of 78 months for offenders sentenced at § 2G2.2 [for possessing and trafficking in material involving sexual exploitation of a minor]; 108 months for offenders who traveled to engage in a prohibited sexual conduct with a minor sentenced at § 2G1.3(a); 139 months for criminal sexual abuse offenders sentenced at § 2A3.1(a); and 240 months for production of child pornography offenders sentenced at § 2G2.1." Child Porn. History Rep't at 47 n.219, 48 n.224. The Commission also notes that "[s]entencing courts have also expressed comment on the perceived severity of the child pornography guidelines through increased below-guidelines variance and downward departure rates." Child Porn. History Rep't at 54.

Sentencing courts are to consider "the history and characteristics of the defendant" as one of the § 3553(a) factors. *See Rita,* 551 U.S. at 365 (Stevens, J., concurring). Although "[m]atters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines," they are "matters that § 3553(a) authorizes the sentencing judge to consider." *Id.* (citations omitted). Amendments to the Guidelines effective on November 1, 2010, amend the Guidelines policy statements relating to age, mental and emotional conditions, physical condition, and military service as grounds for departure under U.S.S.G.

§§ 5K2.0.  *See* 75 Fed. Reg. 27388-01, 27390 (May 14, 2010).  Instead of stating that those factors "are not ordinarily relevant in determining whether a departure is warranted," the amended policy statements generally provide that age, mental and emotional conditions, and physical condition (including drug or alcohol dependence or abuse) or appearance, including physique, <u>may be relevant</u> in determining whether a departure is warranted.  *Id.*  The Commission adopted this proposed departure standard "after reviewing recent federal sentencing data, trial and appellate court case law, scholarly literature, public comment and testimony, and feedback in various forms from federal judges," for the purpose of providing sentencing courts "with a framework for addressing specific offender characteristics in a reasonably consistent manner" to "help 'secure nationwide consistency.'" *Id.* (quoting *Gall, 552 U.S. at 49*).

## II.  DISCUSSION

### A.  Guideline Calculation

The court adopts the findings in the PSR.  Hahn's base offense level under the Guidelines is 22.  *See* U.S.S.G. § 2G2.2(a)(1).  The court finds the following adjustments are applicable:  a two-level increase under U.S.S.G. § 2G2.2(b)(2) for possession of material containing a prepubescent minor; a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain; a four-level increase under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other images of violence; a two-level increase under U.S.S.G. § 2G2.2(b)(6) for use of a computer; and a five-level increase under U.S.S.G. § 2G2.2(b)(7) for possession of more than 600 images.  The court finds a downward adjustment for acceptance of responsibility is warranted.

17

Hahn's resulting offense level is 37.  At criminal history category I, Hahn's recommended sentencing range under the Guidelines is 210 to 240 months.

> B.  Departure

Under the Guidelines, the court finds that Hahn is not entitled to a downward departure.  However, the court will consider the amendments to the Guidelines' departure provisions as reflecting the Commission's concern that those factors are properly considered in connection with the history and characteristics of the defendant. Accordingly, the factors will be addressed in connection with the defendant's motion for a variance under 28 U.S.S.G. § 3553(a).

> C.  Section 3553(a) Factors

Hahn's motion for a deviation or variance from the Guidelines is granted.  The court finds a sentence outside the Guidelines is warranted in this case.  The court finds that a sentence of incarceration for 60 months (the mandatory minimum sentence for the count of conviction) followed by a term of supervised release of ten years will fulfill the objectives of sentencing set out in Section 3553(a).

With respect to the nature and circumstances of the offense, the court finds that possession and distribution of child pornography are forms of sexual exploitation and are serious offenses.  Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or the production of pornography, as well as trafficking in pornography.  Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children.  Hahn's conduct falls close to the low end of the continuum of criminal conduct—from possession to distribution to

production to predatory abuse—that exploits children.  A possessor of child pornography is the least culpable in the chain and is a marginal player in the overall child exploitation scheme.  The varying levels of participation and blameworthiness in connection with distribution are meant to be accounted for in the Guidelines' market-oriented scheme.  It is clear that the statutes criminalizing possession and distribution of child pornography are aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters.  Although file-sharing arrangements help facilitate Internet trafficking in child pornography, there is a qualitative difference between sharing one's computer files and selling child pornography for profit.  This case does not involve any widespread distribution of child pornography or any pecuniary gain.  Although the evidence shows that Hahn distributed or shared files with at least one other person, the evidence does not show any large distribution network.  Hahn did not possess child pornography in order to entice a child nor is there any indication that he has ever had any improper contact with an actual child, that he photographed minors engaged in sexual conduct, or ever made attempts to contact or entice a child.  Hahn is a low-level consumer and somewhat inadvertent distributor of child pornography whose sentence should fall closer to the low end of the statutory range than to the maximum.

In making this determination, the court has also considered Hahn's history and characteristics.  Hahn has several mental health problems.  He has no criminal record.  Based on the court's review of the record, it appears that Hahn's mental status contributed to his actions.  Hahn's mental condition must be considered in determining his culpability for his actions.  His emotional immaturity, negative self-image and emotional deficits lessen his culpability for his actions to some degree.  Importantly, psychological testing

shows that, although he is at moderate risk to reoffend, it would likely be through a non-contact Internet offense.

The court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point.   However, the child pornography Guidelines are driven by Congressional directive and are not grounded in any scientific, statistical, or empirical method.  The advice imparted in the Guidelines does not reflect the sort of empirical data, national experience, and independent expertise that characterize the Sentencing Commission's institutional role.  Given the flaws in the Guidelines' scheme for punishment of Internet child pornography crimes, the Guidelines need not be accorded a high degree of deference by the court.  The Sentencing Commission diverged significantly from its studied, empirical approach in formulating the Guidelines that apply to Hahn's case and the result is a recommended sentence that is greater than necessary to provide just punishment.  Although downloading child pornography is hardly a harmless activity, it is not the equivalent of direct physical abuse or sexual molestation of children, or production of pornography involving children.   The court finds that the ranges of imprisonment recommended under the Guidelines may be appropriate for a sexual predator, but are not a reliable appraisal of a fair sentence in this case.

The Guidelines sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst

offenders.[7]  In the context of this and other Internet child pornography crimes that involve peer-to-peer networks, the Guidelines provide little distinction between a low-level distributor and a high-level distributor.  In this court's experience, there is essentially no Internet child pornography offender who could end up with a Guidelines-recommended sentence that falls at or close to the low end of the statutory range.  A five-year sentence equates with a Guidelines offense level of 25.  With the base offense level established at 22, and a two-point enhancement for use of a computer that is applied in every Internet child pornography case, only an offender who merely received pornography and did not distribute it at all and possessed fewer than ten images that did not contain any of the images of prepubescent minors and sadistic or masochistic acts that are widely prevalent in child pornography would receive a sentence at the low end of the statutory range. Because of the nature of peer-to-peer file sharing programs, a simple possessory crime evolves into a distribution offense as soon as someone accesses a shared file.  In virtually every child pornography prosecution, the application of numerous and severe enhancements results in a Guidelines sentencing range whose low end is close to the statutory maximum.  In this case, as in most, a fairly typical offender with no criminal history has a recommended Guidelines imprisonment range that is close to the statutory maximum at its low end and exceeds the statutory maximum at the high end.  The upper end of the recommended Guidelines range in this case would exceed the statutory maximum by over two years if it were not capped.

---

[7]In this case, the application of numerous enhancements inordinately increases Hahn's Guidelines range of imprisonment.  The Guideline enhancements raise his offense level from 22 to 37 on a scale that tops out at level 43.  Offense levels at or near the top of the sentencing table are generally reserved for only the most serious of offenses and the most dangerous of offenders.  The defendant does not belong in that category.

Hahn, and most defendants, are subject to enhancements for use of a computer and for the number and type of images that apply in virtually every case.  The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court. The enhancements for use of a computer and number of images lack value as a reliable proxy for culpability and are a poor gauge of relative levels of fault between offenders. Because of the unfortunate ease with which large numbers of images can be accessed and stored, most child pornography offenders are subject to enhancements from two to five levels for the number of images.[8]

In this type of distribution scheme, the number of images does not provide the distinction between a large-scale and a small-scale child pornography purveyor that Congress and the Sentencing Commission must have envisioned when promulgating this market-based and quantity-driven scheme.  For example, in contrast to drug quantity in a drug-trafficking prosecution, where the amount of a drug a defendant possesses may have some correlation to his position in a distribution hierarchy, the number of images a defendant possesses is meaningless as an indicator of any position in a pornography distribution system.  The images can be endlessly replicated.  Whatever connection there may be between a defendant's relative guilt and the number of images he possesses, an enhancement of five levels for possession of over 600 images overstates that connection. The increased dangers and harms that make distribution a more serious crime than possession are accounted for in the statutory scheme by the mandatory minimum

---

[8]A five-level enhancement is provided for possession of more than 600 images.  In the court's experience, virtually all offenders fall in that category, with most possessing thousands of images.

sentence provided in section 2252A, and need not be augmented by Guidelines enhancements that further increase a defendant's sentence.

As noted, Hahn was originally charged with a violation of 18 U.S.C. § 2252(a)(4)(B), possession of child pornography, as well as 2252A(a)(2), receipt and distribution of child pornography.  In the context of most Internet child pornography crimes, there is no real distinction between a crime charged under 18 U.S.C. § 2252A(a)(2) (receipt and distribution) and one charged under 2252(a)(4)(B) (possession), since both statutes criminalize "receipt" of child pornography.  One must receive child pornography in order to possess it via the Internet.  Because "receipt" is equated with distribution in the sentencing scheme, the prosecutor is left with unfettered discretion in charging and plea bargaining decisions.

The court finds the 17½ to 20-year sentence recommended under the Guidelines (based on the imposition of numerous and excessive enhancements for circumstances that appear in nearly every child pornography case such as use of the Internet, amassing numerous images, possessing images of prepubescent minors and violence, and some "distribution" of images in return for other images) is greater than necessary to protect the public and to deter Hahn from reoffending. The mandatory minimum sentence of five years is appropriate to achieve the goals of sentencing in this case.  Five years is a significant term of imprisonment for a first offender.  The public will be adequately protected by a ten-year term of supervised release with strict conditions and by the provision of mental health treatment and sex offender treatment to Hahn.  The mere fact of the prosecution of these cases arguably deters others from engaging in this sort of conduct.  The additional deterrent value of a sentence any longer than five years would be marginal.

23

With respect to general deterrence, although conduct like Hahn's may sustain the market for child pornography, much of that market is driven by compulsive behavior that arguably will not be deterred in any event. The deterrent effect of a lengthy sentence is further lessened by the international character of the market for child exploitation offenses. To the extent that harsh punishment is necessary to deter harm to children, punishing a less-culpable offender as harshly as the worst does not satisfy the goals of sentencing and encourages disrespect for the law.

The court has also considered the need to avoid sentencing disparities. The history of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. This case does not involve such conduct and there is no indication that Hahn is likely to engage in any such conduct in the future. Legislative history also shows concern with dangerous child abusers and repeat offenders. The enhancements of increasing severity for quantity and for recidivism are designed to apply to the most dangerous of child pornography offenders and Hahn does not fall in that category. There is no evidence that Hahn has ever abused, or is likely to abuse, children. Hahn's lack of a criminal history and the indication that any risk of reoffending would not include actual contact with children suggests that a sentence of five years, followed by ten years of supervised release, is likely to afford adequate punishment and deterrence.

The court further finds that an outside-the-Guidelines sentence will respect the distinction between Hahn's culpability and the far greater culpability of an actual predator

24

or abuser.  The sentence of a purveyor or small-time distributor of child pornography should be proportional to and significantly lower than a sentence for an exploitative crime that involves acts of abuse by a defendant.  Moreover, the court finds that a sentence of five years is more proportional to other crimes than the recommended Guidelines sentence of over seventeen years would be.

Under the Guidelines scheme, a person who views child pornography on the Internet can receive a longer sentence than the actual perpetrators of child abuse and those who commit serious drug crimes, assaults and even murder.  Hahn's sentence is close to the median sentence for a person sentenced for child pornography crimes under the statutory provision that does not have a mandatory minimum sentence.  The sentence is relatively proportional to the median sentences for defendants who have engaged in more serious child sexual exploitation crimes such as production of child pornography, travel to engage in sexual conduct with a minor, or sexual abuse of minors.

DATED this 3rd day of January, 2011.

BY THE COURT:


s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.